**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Randolph Day, | Case No.: 2:17-cv-01596-JAD-EJY |
| Plaintiff | |
| v. | **Order Granting Summary Judgment in Favor of Defendants and Dissolving Injunction** |
| Longvue Mortgage Capital Inc., as trustee for WestVue NPL Trust II, and American Solutions, LLC, | |
| | [ECF Nos. 55, 58, 70] |
| Defendants | |

Plaintiff Randolph Day brought this action to avoid foreclosure on his Henderson, Nevada, home after many years of failing to pay his $900,000 mortgage, and he was granted a preliminary injunction enjoining foreclosure early in this action.[1] Day's claims are based on two main theories: that the endorsement of the note from his mortgage broker to the lender was invalid and that the named trustee lacked the authority to foreclose after it assigned its interest to another entity in 2015. The parties now cross-move for summary judgment.[2] Because I find that Day's theories and claims are unsupported by the record, I grant summary judgment in favor of the defendants, dissolve the preliminary injunction, and close this case.

**Background**

**I.    Flagstar Bank was the original note holder and beneficiary of the deed of trust.**

In 2007, Randolph Day bought the home at 32 Via Paradiso Street in Henderson, Nevada,[3] with a $900,000 mortgage loan that he obtained by executing an adjustable-rate note in

---

[1] ECF No. 15 (minutes).
[2] ECF Nos. 55 (plaintiff's motion); 58 (defendants' motion).
[3] ECF No. 58-1 (note).

favor of Mortgage Max Corporation, the mortgage brokerage that Day owned.[4] Day secured the note with a deed of trust in favor of Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Mortgage Max.[5] The deed of trust was recorded in Clark County, Nevada, on April 18, 2007, as Instrument No. 20070418-0003075.[6]

Mortgage Max was only the loan originator, not the lender, so it "did not have the power or the authority to execute any endorsement."[7] That power remained with the lender, Flagstar Bank, FSB, and the note contains an endorsement to Flagstar that is signed by Dorothy Davis, a Loan Operations Associate with Flagstar.[8] The note also contains an endorsement in blank for Flagstar's Senior Vice President and First Vice President.[9] "Mortgage Max signed an Endorsement Authorization Agreement (EAA) that empowered Flagstar, and its employees, to endorse the note and assign the deed of trust on behalf of Mortgage Max."[10] Day also signed the EAA.[11]

**II.   Flagstar assigns the loan to WestVue in June 2015.**

Flagstar serviced the loan from 2007 to 2015.[12] In June 2015, it assigned its interest in the deed of trust to WestVue NPL Trust II and recorded the assignment.[13] Flagstar also

---

[4] ECF Nos. 1-1 (entity details); 58-2 at 5–6 (Day's deposition).
[5] ECF 58-3 (deed of trust).
[6] *Id.*
[7] ECF No. 58-1 at 4.
[8] *Id.*
[9] *Id.* at 5.
[10] ECF Nos. 58 at 4; 58-4 at 13–14 (EAA).
[11] *Id.*
[12] ECF No. 58-4 at 4.
[13] ECF No. 58-7 (WestVue assignment).

transferred the note to WestVue, thus making WestVue the holder of the note and the record beneficiary for the deed of trust. Longvue Mortgage Capital Inc. serviced the loan for WestVue.[14]

### III. WestVue assigns the loan to WVUE in December 2015.

Longvue's Rule 30(b)(6) designee Kevin Braga testified that WVUE 2015-I presently holds the rights to the Day loan.[15] Braga later explained in his declaration that WVUE 2015-I and WestVue are "trust entities owned by the same investor that hold pools of loans that are regularly transferred between those entities and other trust entities owned by the same investor."[16] "WestVue transferred the Day loan to WVUE on December 11, 2015," and "[p]ursuant to an agreement between WestVue and WVUE[,] either party may proceed with foreclosure on a Note and Deed of Trust on behalf of the other and in its own name, even though the other party may hold the Note and Deed of Trust."[17] WVUE did not record the assignment of the deed of trust until May 20, 2019, approximately two years into this lawsuit.[18]

### IV. Longvue attempts to foreclose on Day's home.

Day testified, and his wife Mary confirmed, that Mary made all of the mortgage payments on the loan until 2011, when Carrington, their loan servicer at the time, sold the loan to Flagstar and the Days stopped receiving payment statements.[19] WestVue, not WVUE, caused

---

[14] ECF No. 59 at 5.

[15] ECF No. 59-9 at 3 (Braga's deposition).

[16] ECF No. 59 at 3 (Braga's declaration).

[17] *Id.*

[18] ECF No. 58-8 (WVUE assignment).

[19] ECF No. 58-2 at 12 (Randolph Day's deposition); 58-10 at 4 (Mary Day's deposition). Carrington serviced the loan at some point after Flagstar initially serviced it, and Flagstar began servicing the loan again in 2011. *See id.*; ECF No. 55-1 at 2. In November 2010, while Carrington was the loan servicer, Day and Carrington agreed to a loan modification, increasing

three Notices of Default to be recorded: in June 2016, February 2017, and March 2017.[20] For each notice, WestVue, not WVUE, attested that it was the current beneficiary of the deed of trust.[21] But WVUE certified that it held the original note, deed of trust, and each subsequent endorsement for the first notice.[22]

Day participated in a foreclosure meditation for the first notice, but neither WestVue nor WVUE attended.[23] However, Longvue participated in the process by reviewing—and denying—Day's request for a loan modification.[24] The second notice was rescinded in March 2017, the same day that Longvue filed the third notice.[25] And in June 2017, WestVue's servicer filed a Notice of Trustee's Sale, scheduling the foreclosure sale for July 3, 2017.[26]

## V.  Day sues and the foreclosure sale was enjoined.

Day filed this action in June 2017 and successfully moved to enjoin the foreclosure sale.[27] He asserts causes of action for statutorily defective foreclosure, slander of title, lack of standing to foreclose/wrongful foreclosure, violations of the Fair Debt Collections Practices Act, deceptive trade practices, civil racketeering, mortgage-lending fraud, and intentional infliction of emotional distress.[28]

---

the principal balance of the loan to $902,667.01, setting a lower monthly payment schedule, and otherwise reaffirming the terms of the original loan and deed of trust. ECF No. 58-6 at 2–4.

[20] ECF No. 55-7 at 3 (First NOD); 55-9 (Second NOD); 55-10 (Third NOD).
[21] ECF No. 55-7.
[22] ECF No. 55-8 (certificate of possession).
[23] ECF No. 55-1 at 4 (Day's declaration)
[24] ECF No. 59 at 4.
[25] ECF No. 55-11 (notice of recission).
[26] ECF No. 55-12 (notice of trustee's sale).
[27] ECF Nos. 4 (motion for preliminary injunction); 15 (minute order entering injunction).
[28] ECF No. 1 (complaint).

Day now moves for partial summary on three of his claims—statutorily defective foreclosure, wrongful foreclosure, and slander of title—based on his theory that WestVue did not have the authority to foreclose on the home in 2016 and 2017 because it had already assigned its interest to WVUE in December 2015.[29] WestVue cross-moves for summary judgment on all of Day's claims.[30] Its principal argument is that "WestVue and WVUE are trust entities owned by the same investor that holds pools of loans that are regularly transferred between those two entities and other[s] owned by the same investor" and, based on this arrangement, WestVue and WVUE had an agreement that WestVue could foreclose on a loan in its name and on WVUE's behalf.[31] Day conceded his seventh (mortgage-lending fraud) and eighth (IIED) claims, so I grant summary judgment to WestVue on those claims and address only the parties' points for the remaining claims.

## Discussion

**I.  Standard for evaluating cross-motions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[32] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[33] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present

---

[29] ECF No. 55.

[30] ECF No. 58.

[31] *Id.* at ¶¶ 33–34.

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[33] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

5

specific facts that show a genuine issue for trial.[34]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[35]

## II. There are no triable issues of fact regarding the endorsement from Mortgage Max to Flagstar.

Essential to Day's claims for wrongful foreclosure, FDCPA violations, and slander of title, is his theory that the endorsement from Mortgage Max to Flagstar was fraudulent because it was signed by Dorothy Davis, whom Day submits wasn't a Mortgage Max employee, and this fraudulent assignment tainted Flagstar's assignment to WestVue.  But Day neglects to acknowledge (let alone contest) the EAA that he signed and that authorized Flagstar to endorse the note on Mortgage Max's behalf.[36]  He also testified that though Mortgage Max was listed as the lender, it was only the broker and Flagstar was the true lender.[37]  Moreover, Dorothy Davis was Flagstar's employee and had authority under the EAA to endorse the note.[38]  Day insists that triable issues of fact remain on this theory,[39] but he has failed to provide any evidence to controvert the record, so the defendants are entitled to summary judgment on this theory.

---

[34] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[35] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[36] ECF No. 58-4 at 13–14 (EAA).

[37] ECF No. 58-1 at 4.

[38] *Id.*

[39] ECF No. 55 at 17.

### III. There are no triable issues of fact regarding WestVue's authority to foreclose, despite the transfer to WVUE in 2015.

Day's remaining arguments turn on his theory that WestVue lacked the authority to foreclose because it had assigned its interest in the loan to WVUE in 2015 and therefore committed fraud when it recorded the notices of default in its name.[40] WestVue objects to this argument because: (1) Day did not allege this claim in his complaint, (2) failed to amend the pleadings before the close of discovery, and (3) WestVue would be prejudiced if this court considers it.[41] Day isn't asking for leave to amend, though, because his general allegations about the fraudulent recordings should encompass his arguments challenging the assignment to WVUE. And WestVue fails to articulate any form of prejudice other than its frustration about Day's tardiness in raising this issue.

Assuming without deciding that this factual theory is properly before the court,[42] the record demonstrates that WestVue is entitled to summary judgment on it. WestVue's failure to record its assignment to WVUE is of no moment; Nevada law permits a named beneficiary to foreclose on the note holder's behalf if the two entities have an agency relationship,[43] and there is evidence of such a relationship here. WestVue submitted the deposition and declaration of its FRCP 30(b)(6) designee, Kevin Braga, who explains that WestVue and WVUE are trust entities

---

[40] *Id.* at 11–16.

[41] ECF No. 61 at 5 (opposition to Day's motion for summary judgment).

[42] *See Lewis v. City & Cty. of San Francisco*, 908 F.2d 977 (9th Cir. 1990) (table decision) (internal quotations and alteration omitted) ("Delay, by itself, is insufficient to justify denial of leave to amend.").

[43] *See Berezovsky v. Moniz*, 869 F.3d 923, 932 (Nev. 2017); *In re Montierth*, 354 P.3d 648, 650–51 (Nev. 2015) ("A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.") (quoting Restatement (Third) of Prop.: Mortgages § 5.4(c) (1997); *see also id.* at § 5.4 cmt. e & illus. 9)).

that are owned by the same investor, that the investor holds pools of loans that are regularly transferred amongst the sister entities, and that WestVue and WVUE had an agreement authorizing WestVue to foreclose on WVUE's behalf and vice versa.[44] Day claims that "[n]o such agreement exists" because "no such agreement was produced, no such agreement was mentioned during any foreclosure proceedings, and no such agreement was even referenced in years of litigation . . . until now."[45] But he fails to provide any evidence to controvert Braga's testimony. And his argument is undercut by his own submission of WVUE's certification that it held the original note, subsequent endorsement/allonges, and the deed of trust in August 2016.[46] So Day has failed to show that there is a triable issue of fact on this theory.

**IV.  WestVue is entitled to summary judgment on Day's slander-of-title claim.**

Day argues that he is entitled to summary judgment on his slander-of-title claim because WestVue recorded the notices certifying that it was the proper foreclosing authority when it, in fact, had assigned the loan to WVUE in 2015.[47] WestVue contends that this "technicalit[y] . . . is immaterial" due to its agreement with WVUE, and the claim fails anyway because the recordation did not affect the property's vendibility.[48]

To succeed on a slander-of-title claim in Nevada, a plaintiff must show that (1) the defendant made a false and malicious communication that was disparaging to the plaintiff's title in land and (2) the plaintiff sustained special damages as a result of this communication.[49] The

---

[44] ECF No. 59 at 3 (Braga's declaration).
[45] ECF No. 63 at 6.
[46] ECF No. 55-8.
[47] ECF No. 55 at 12–13.
[48] ECF No. 61 at 4–6.
[49] *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 478 (Nev. 1998) (quoting *Higgins v. Higgins*, 744 P.2d 530, 531 (Nev. 1987)).

disparaging information must be published to a third party.[50]  Recording a false deed of trust satisfies part of the first element.[51]  The malice requirement is satisfied if the defendant knew that the statement was false or acted in reckless disregard of its truth or falsity.[52]  Attorney fees are available as special damages in slander of title actions, as are damages for the impaired vendibility of the property.[53]

There is no evidence of malice here.  "Where a defendant has reasonable grounds for belief in his claim, he has not acted with malice,"[54] and, as explained above, the record shows that WestVue had authority to foreclose on WVUE's behalf.  Day claims that Braga's testimony is insufficient and he cites the sham-affidavit rule to argue that WestVue misrepresented its affiliation with WVUE.[55]  But the sham-affidavit rule only bars an affidavit that contradicts a witness's prior testimony,[56] and Braga's testimony is entirely consistent.[57]  Moreover, Day fails to submit any evidence to contradict Braga's testimony, and neither party denies that WestVue acted in reliance on its agreement with WVUE.

---

[50] *See* Restatement (Second) of Torts § 624 (1977); *see Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983) (relying on the Restatement and California law to define malice in a slander-of-title claim).

[51] *Summa Corp. v. Greenspun*, 607 P.2d 569, 573 (Nev. 1980), *on reh'g*, 655 P.2d 513 (1982), *and disapproved of on other grounds by Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 35 P.3d 964 (Nev. 2001).

[52] *Rowland*, 662 P.2d at 1335.

[53] *Horgan v. Felton*, 170 P.3d 982, 988 (Nev. 2007); *Summa Corp.*, 607 P.2d at 573.

[54] *Rowland*, 662 P.2d at 1335.

[55] ECF No. 63 at 13.

[56] *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

[57] *Compare* ECF No. 59-9 at 3 (Braga's deposition), *with* ECF No. 59 at 3 (Braga's declaration).

Day also fails to show that the notice of default was otherwise fraudulent. Mary Day testified that she stopped making payments on the loan in 2011 and through 2015, during which Flagstar owned the loan. The record shows that Flagstar was authorized to endorse the note on behalf of Mortgage Max, so it was authorized to transfer its interest to WestVue in 2015.[58] I thus grant WestVue summary judgment on Day's slander-of-title claim.

**V.   WestVue is entitled to summary judgment on Day's wrongful-foreclosure claim.**

"A wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself."[59] Because Day hasn't shown that WestVue lacked the authority to file the notice of default on WVUE's behalf, I grant WestVue summary judgment on Day's wrongful-foreclosure claim.

**VI.  WestVue is entitled to summary judgment on Day's statutorily defective foreclosure claim.**

Nevada Revised Statutes § 107.080 establishes the hoops that lenders must jump through to foreclose on a home. This statute also provides specific mechanisms that homeowners can use to challenge the foreclosure process. Day alleged that WestVue failed to comply with procedural requirements for non-judicial foreclosures under NRS 107.080 *et seq.* because he didn't receive a phone call or mail addressing foreclosure alternatives, a copy of the notice of default by mail or physical posting on the home's door, information about his right to cure, or the amounts owed.[60] But he abandons these alleged procedural deficiencies in his motion for summary judgment, instead challenging WestVue's authority to foreclose on the home when it had assigned its rights

---

[58] ECF No. 58-4 at 13–14.
[59] *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013).
[60] ECF No. 1 at 8.

two years earlier.[61] And while Day argues in his opposition to WestVue's motion that "these failings did occur (and WestVue NPL's compliance is absolutely in dispute),"[62] he again abandons this theory in favor of arguing that WestVue lacked the authority to foreclose under NRS 107.080(2)(b).[63] Having already decided that WestVue possessed the requisite authority to foreclose, and seeing no legal or factual argument in support of Day's procedural-deficiency theory for this claim, I grant summary judgment to WestVue.

**VII.  WestVue is entitled to summary judgment on Day's Fair Debt Collections Practices Act claim.**

The FDCPA prohibits "abusive, deceptive, and unfair debt collection practices."[64] In *Obduskey v. McCarthy & Holthus LLP*, the United States Supreme Court held that " . . . but for § 1692f(6) [of the FDCPA], those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act."[65] Section 1692f(6) provides that the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" is an "unfair practice" if:

> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or

---

[61] ECF No. 55 at 14–15.

[62] ECF No. 63 at 14.

[63] NRS 108.08(2)(b) provides that "[t]he power of sale must not be exercised, however, until . . . [t]he beneficiary, the successor in interest of the beneficiary or the trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of the election to sell or cause to be sold the property to satisfy the obligation."

[64] 15 U.S.C. § 1692.

[65] *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019).

>   (C) the property is exempt by law from such dispossession or disablement.[66]

Day attempts to create a genuine issue of fact for this claim by arguing that it was an unfair debt-collection practice for WestVue to initiate the nonjudicial foreclosure proceedings against him when "it had no independent right to do so" and that it can't rely on its recording of the assignment in 2019 to cure the record.[67] But as Day points out, the belated recording doesn't affect the assignment.[68] And, as I have explained throughout this order, Day fails to show that WestVue did not have a right to enforce the security instrument for WVUE, and it is uncontested that Day had defaulted on the loan. So I grant WestVue summary judgment on this claim.

**VIII. WestVue is entitled to summary judgment on Day's claim for deceptive trade practices.**

Nevada's Homeowner's Bill of Rights[69] sets out several requirements that a trustee must comply with 30 days before recording a notice of default or notice of election to sell, including a statement of the borrower's account status, the foreclosing party's right to sell, and information about foreclosure alternatives.[70] Day complains that Longvue recorded the allegedly fraudulent February and March 2017 notices of default "without contacting Day to explore alternatives to foreclosure, failing to provide Day with information about his loan and default as required by law, and falsely certifying that they attempted to contact Day, and provided the required

---

[66] 15 U.S.C. § 1692f(6)(A)–(C).

[67] ECF No. 63 at 17.

[68] *See id*. (citing *Foust v. Wells Fargo, N.A.*, 373 P.3d 914, n.5 (Nev. 2011) (table) ("Recordation is not necessary for the assignment to be effective and operates simply to give notice.") (citing Nev. Rev. Stat. § 106.210)).

[69] Nev. Rev. Stat. § 107.500 *et seq*.

[70] *Id*.

12

information to Day."[71]  Regarding loss mitigation, WestVue submits evidence that Longvue's sub-servicer, FCI, attempted to call Day about the foreclosure as early as June 14, 2015.[72] WestVue also submits that it sent Day loss-mitigation letters on February 18, 2016, and March 14, 2016.[73]  Both of these letters contain the loan-status information Day alleged was missing. Longvue also submits evidence that it participated in foreclosure mediation on October 3, 2016, and that it reviewed but denied his application for a loan modification.[74]  Day hasn't provided any evidence to contradict WestVue's evidence.[75]  And I have already rejected his challenge to WestVue's standing to foreclose.[76]  Because Day has failed to demonstrate a genuine issue of material fact regarding the alleged deceptive trade practices, I grant summary judgment to the defendants.

### IX. WestVue is entitled to summary judgment on Day's civil-conspiracy claim.

A civil conspiracy claim under Nevada law exists when "two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results."[77]  WestVue argues that it is entitled to summary judgment on this claim because Day failed to identify any conspirator, other than Longvue, in his

---

[71] ECF No. 1 at 11.

[72] Braga testified that the defendants disclosed to Day a spreadsheet labeled WFZ2295 that contains a record of all the communications between Longvue and Day beginning on June 14, 2015.  ECF No. 59 at 3.

[73] ECF No. 58-13 (foreclosure prevention letters).

[74] ECF No. 59 at 4.

[75] *See generally*, ECF No. 63 at 15–16.

[76] *Id*. at 16.

[77] *Guilfoyle v. Olde Monmouth Stock Transfer Co*., 335 P.3d 190, 198 (Nev. 2014) (quoting *Consol. Generator–Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998)).

complaint or deposition.[78] Even if Day had alleged WVUE as a coconspirator, he fails to show that it and WestVue engaged in "an unlawful objective"[79] when it is undisputed that he defaulted on the loan, and the record shows that WestVue had authority to foreclose on WVUE's behalf. Accordingly, I grant summary judgment to WestVue on Day's civil-conspiracy claim.

**X.    Defendants' motion to dissolve the preliminary injunction [ECF No. 70]**

I enjoined the sale of the subject property three years ago.[80] While these motions for summary judgment were pending, the defendants asked me to dissolve the injunction based on factual developments that disproved Day's wrongful-foreclosure theories.[81] "A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."[82] As I explain above, the defendants have submitted evidence that make Day's theories untenable: as CEO of Mortgage Max, Day authorized the assignment to Flagstar, and WestVue's authority to foreclose on WVUE's behalf is uncontroverted. Because this conclusion—and this order granting summary judgment—prevents Day's success on the merits of any claim, the preliminary injunction is dissolved.[83]

---

[78] ECF No. 58 at 17 (citing ECF Nos. 1 at 11–12; 58-2 at 20).

[79] *Guilfoyle*, 335 P.3d at 198 (internal quotation marks omitted).

[80] ECF No. 15.

[81] ECF No. 70.

[82] *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)).

[83] *See id*. at n.14 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("Plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.")).

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 58] is GRANTED.**

IT IS FURTHER ORDERED that the plaintiff's motion for partial summary judgment **[ECF No. 55] is DENIED.**

IT IS FURTHER ORDERED that the defendants' motion to dissolve the preliminary injunction **[ECF No. 70] is GRANTED.**

And because this order resolves all claims in this action, IT IS FURTHER ORDERED that the Clerk of Court is directed to ENTER FINAL JUDGMENT for the defendants and CLOSE THIS CASE.

Dated: June 12, 2020

_____
U.S. District Judge Jennifer A. Dorsey